NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES of AMERICA,

v.

STEVEN CAMPBELL,

Defendant.

Cr. No. 18-354

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on the Motion by Defendant Steven Campbell ("Defendant") to suppress any evidence found and seized in connection with Defendant's arrest on May 4, 2018. (Mot. at 1–2, ECF No. 19.) Defendant contends that the arrest and seizure on May 4, 2018 violated the Fourth Amendment. (*Id.*) The United States of America (the "Government") opposes. (Gov't Br. at 1, ECF No. 20.) The Court has decided the request after considering the parties' written submissions and conducting oral argument on February 20, 2019. For the following reasons, Defendant's request to suppress evidence is denied.

## BACKGROUND

At approximately 11:23 PM on May 4, 2018, Officer Michael Manfredi stopped at a red traffic light at the intersection of Prospect Street and Olden Avenue in Ewing, New Jersey. (Dashcam Video, Gov't Ex. 1.) Officer Manfredi observed what he described as an obstructed license plate in violation of N.J.S.A. § 39:3-33 on the car directly in front of him, a red Range Rover. A plastic border around the license plate obstructed the bottom one-third of the words

1

"Garden State" on the plate; none of the plate's identification numbers were obstructed. (Dashcam Video at 23:23:20; Gov't Ex. 1.) While both cars were still stopped at the red light, Officer Manfredi used his patrol vehicle's Mobile Data Terminal ("MDT") to pull up information regarding the Range Rover. The MDT indicated that the Range Rover was registered to Defendant, whose New Jersey driver's license was suspended; the MDT also displayed a picture of Defendant. Officer Manfredi waited at the red traffic light for a total of about seventeen seconds while he looked at this information. (*See* Dashcam Video at 23:23:15–33.)

Defendant then made a left turn onto Olden Avenue. (*Id.* at 23:23:32–34.) Officer Manfredi testified that during this left turn, he identified Defendant as the driver of the Range Rover through both the driver-side mirror and the driver-side window. Officer Manfredi followed the Range Rover and proceeded to pull it over shortly thereafter as it was turning in to a Wendy's parking lot on Olden Avenue. (*Id.* at 23:23:52–24:25.) The Range Rover complied and stopped in a parking spot.

Once stopped in the parking lot, Officer Manfredi approached the Range Rover from the passenger's side and asked the driver, who was indeed Defendant, for his license, registration, and proof of insurance. (Bodycam Video at 23:24:45–56, Gov't Ex. 2.) Defendant presented his license but could not seem to locate his registration and insurance. (*Id.* at 23:25:10–19.) Defendant opened the center-console compartment only slightly and reached in, relying more so by touch than sight. (*Id.* at 23:25:19–25.) Officer Manfredi testified that he thought this conduct was "suspicious" at the time. The Bodycam Video does not inform the Court about the contents inside the center console, but Officer Manfredi testified that it was at this point that he saw what

2

he thought was about one inch of the "butt" or "grip" of a handgun.[1]

Defendant closed the center console and then opened the top portion of the glove box. He picked out several pieces of papers, examined them, and handed two insurance cards to Officer Manfredi. (*Id.* at 23:25:24–26:10.) Officer Manfredi informed Defendant that the two insurance cards were both expired and handed them back; in response, Defendant indicated that he had a valid insurance card somewhere. (*Id.* at 23:26:12–15.)

Officer Manfredi then suggested that Defendant look for the valid insurance card in the center console: "It might be in the center console. Did you try the center console?" (*Id.* at 23:26:37–41.) Defendant checked the center console for the second time. (*Id.* at 23:26:53–59.) Officer Manfredi testified that it was at this point that he saw the entire handle or grip of a handgun, which confirmed his prior suspicion; again, the Bodycam Video does not inform the Court about the contents inside the glove box. Defendant closed the center console and opened the glove box for the second time. (*Id.* at 23:27:00–03.) Officer Manfredi testified that he then identified a second gun in the glove box. Immediately, Officer Manfredi pulled his service weapon, pointed it at Defendant, and ordered that Defendant put his hands on the steering wheel; Defendant complied. (*Id.* at 23:27:04–45.)

A second officer arrived at the scene shortly thereafter and assisted Officer Manfredi in placing Defendant in handcuffs. (*Id.* at 23:28:19–29:20.) Before any search was conducted, Officer Manfredi informed another officer that there was a gun in the center console and a second gun in the glove box. (*Id.* at 23:29:28–31.) The officers then searched the vehicle and recovered a Smith & Wesson .40-caliber handgun loaded with fourteen rounds, a Kel-Tech .380-

---

[1] The Bodycam Video was filmed from a different vantage point compared to Officer Manfredi's line of vision.

caliber handgun loaded with five rounds, two loaded magazines, and an unsealed bottle of liquor. (*Id.* at 23:31:05–23:44:18.) Officer Manfredi took photographs of the vehicle, center console, glove box, handguns, magazines, and liquor bottle. (*See* Gov't Exs. 3A–3J.) Defendant now seeks to suppress this evidence.

## LEGAL STANDARD

The Fourth Amendment protects the public against "unreasonable searches and seizures." U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citation omitted). However, "[a] well-established exception to the Fourth Amendment's warrant requirement permits an officer to 'conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). This exception applies in equal force to a traffic stop, which is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

Considering the totality of the circumstances, *United States v. Brown*, 448 F.3d 239, 247 (3d Cir. 2006), the officer need only "some minimal level of objective justification for making a [traffic] stop," *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008) (quoting *Alabama v. White*, 496 U.S. 325, 329–30 (1990)). For example, an officer "who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Thompson*, 772 F.3d 752, 759 (3d Cir. 2014) (quoting *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004)). An "objective review of the facts" must show that the officer "possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006).

However, "[w]here reasonable suspicion for the traffic stop is lacking, the evidentiary fruits of the traffic stop must be suppressed." *Lewis*, 672 F.3d at 237. "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. But once the defendant has established a basis for his motion, . . . the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)).

## **DISCUSSION**

Defendant primarily challenges three events that gave rise to the arrest resulting in inculpatory evidence. First, Defendant questions Officer Manfredi's claim that the obscured license plate caused him to investigate the Range Rover and its driver. (Mot. at 5.) Defendant's argument, however, is at odds with Officer Manfredi's testimony and contemporaneous statements. While still at the scene shortly after the arrest, Officer Manfredi explained to another officer that the license plate infraction indeed caused him to investigate the vehicle: "There was a license plate border, so I ran it, and he was suspended, so I stopped him." (Bodycam Video at 23:40:18–38.)

Second, after pulling up information with the MDT and discovering that the registrant of the Range Rover had a suspended license, Defendant doubts that Officer Manfredi was able to identify the registrant as the driver of the Range Rover. (Mot. at 5.) But notwithstanding Officer Manfredi's supposed identification, he was justified in stopping the Range Rover as soon as he determined that the Range Rover committed the license plate infraction. N.J.S.A. § 39:3-33 prohibits any person from "driv[ing] a motor vehicle which has a license plate frame or identification marker holder that conceals or otherwise obscures *any part* of *any marking* imprinted upon the vehicle's registration plate." (emphasis added.) Officer Manfredi testified

5

that a black border around the license plate obstructed the bottom one-third of the plate where "Garden State" is printed, and the Government's exhibit corroborates that testimony. (*See* Gov't Ex. 3A.) However slight "any part" of "any marking" on the plate is obscured is of little import. *See State v. DeVincentis*, 2011 N.J. Super. Unpub. LEXIS 1855, at *3–5 (Super. Ct. App. Div. July 11, 2011) (denying motion to suppress where the words "Garden State" and "New Jersey" were partially obstructed on the license plate because an obstruction "is not limited . . . to the 'embossed' identifying letters and numbers on the license plate"). Once Officer Manfredi determined that the Range Rover violated N.J.S.A. § 39:3-33, that determination alone was sufficient to lawfully stop the vehicle. *See Johnson*, 63 F.3d at 245 (finding that the officer's "basis for the stop"—a belief that the defendant violated the state vehicle code—"*standing alone*, met Fourth Amendment requirements" (emphasis added)); *Thompson*, 772 F.3d at 759 ("A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." (quoting *Bonner*, 363 F.3d at 216)); *see also State v. Murphy*, 570 A.2d 451, 455–56 (N.J. Super. Ct. App. Div. 1990) (finding stop justified, and thus denying motion to suppress evidence seized as a result of the stop, where officer had reasonable and articulable suspicion that license plate violated N.J.S.A. § 39:3-33).

Even assuming, *arguendo*, that the Range Rover's violation of N.J.S.A. § 39:3-33 alone could not justify the traffic stop, the fact that the registrant of the Ranger Rover had a suspended license provides additional justification. Defendant casts doubt on whether Officer Manfredi could have actually identified the registrant as the driver of the Range Rover through the driver-side mirror and window at night. But that is a distinction without a difference. Aware that the registrant of the vehicle had a suspended license, Officer Manfredi had reasonable suspicion to initiate an investigatory stop and investigate whether the driver had a valid driver's license,

particularly where he also had no reason to believe that the registrant was *not* the driver of the vehicle. The officer need not unequivocally know at the time of the stop whether the driver has committed a traffic violation; "[t]his standard is not particularly rigorous, as no traffic law need actually have been broken, nor does the stopping officer have to be correct regarding the facts." *United States v. Fleetwood*, 235 F. App'x 892, 895 (3d Cir. 2007) ("[A]n officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place." (quoting *Delfin-Colina*, 464 F.3d at 398)). These circumstances therefore provide a second justification for stopping the Range Rover.

Finally, Defendant contended at oral argument that Officer's Manfredi suggestion during the traffic stop—that Defendant may want to look in the center console again for his valid insurance card (*see* Bodycam Video at 23:26:37–41)—was beyond the scope of the traffic stop and thus constituted an unreasonable "search" under the Fourth Amendment. Defendant seems to intimate that Officer Manfredi sought to prod Defendant into opening the center console because Officer Manfredi had previously saw what he thought was the "butt" or "grip" of a handgun, not because Officer Manfredi actually thought the valid insurance card was in there.

Of course, any inquiries unrelated to the purpose of the traffic stop that "measurably extend [its] duration" are unconstitutional, *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015), but "ordinary inquiries incident to a traffic stop . . . which serve the purpose of enforcing the traffic code" are constitutional, *United States v. Green*, 897 F.3d 173, 179–80 (3d Cir. 2018) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and *inspecting the automobile's registration and proof of insurance*." *Rodriguez*, 135 S.

Ct. at 1615 (emphasis added).

Regardless of whether Officer Manfredi's suggestion was at least partly motivated by his belief that he previously saw a handgun, Officer Manfredi testified that he suggested the center console because drivers commonly store their insurance cards in there and, in fact, Defendant had already rummaged through his center console voluntarily in order to look for his insurance card. Defendant argues that his insurance was valid at the time (*see* Def. Ex. 3) and points out that Officer Manfredi did not ultimately even issue a citation for failing to produce valid insurance, but the weight of that contention is overstated. Simply put, Officer Manfredi's conduct remained within the constitutional boundaries of the Fourth Amendment. Because the arrest and seizure on May 4, 2018 did not violate Defendant's rights accorded by the Fourth Amendment, Defendant's request for suppression is denied.

## CONCLUSION

For the reasons stated herein, Defendant's request to suppress any evidence found and seized in connection with his arrest on May 4, 2018 is denied. An appropriate order will follow.

Date: 02/28/2019                                     */s/ Anne E. Thompson*
                                                     ANNE E. THOMPSON, U.S.D.J.